## In re Ten to Six Club

*J. Paul MacElree* and *Peter P. Zion* for appellant.

*Martin F. Hatch,* Special Deputy Attorney General, for Liquor Control Board.

WINDLE, P. J., April 30 1945.—This is an appeal from the refusal of the Pennsylvania Liquor Control Board to grant a club liquor license to appellant for premises located in the Borough of Phoenixville in this county on the sole ground, as stated by the board, that "The quota for the Borough of Phoenixville is exceeded and the board is prohibited by Act No. 358 from issuing any new licenses, except hotels, for this municipality." The material and relevant facts were agreed to and placed upon the record by stipulation of counsel. After oral argument the matter is before us for disposition. We have concluded that the action of the board must be sustained.

As pointed out in the opinion filed by this court on October 28, 1940, in In the Matter of Stamates J. Manukas, an appeal from the Liquor Control Board:

"In accordance with the provisions of section 404 of the Pennsylvania Liquor Control Act of 1933, as reënacted and finally amended June 16, 1937, P. L. 1762, we 'hear the application de novo' and 'either sustain the refusal of the board or order the issuance of the license to the applicant'. Our understanding of our duties in that connection is that we hear the application for the license sought without reference to any action that the board may have taken and determine whether in our judgment the license should be granted. While there is some divergence of opinion on this point in the reported cases decided in various courts of common pleas in this State, nevertheless we agree with those holding to the effect above stated—we can read the words of the statute in no other light. In Privol's Appeal, 20 D. & C. 163, decided before the provision that such an appeal should be heard de novo was incorporated in the statute, Judge McConnell (Beaver County) held that an appeal from the action of the board must be so heard and considered even under the terms of the act as it then was and said 'we must hear and determine the application for a license made by Anna Privol as though it had not been passed upon by the Liquor Control Board.' With that view we agree and have considered this appeal in that light."

The facts now agreed upon are as follows:

Appellant The Ten to Six Club was duly incorporated under the laws of this Commonwealth by decree of this court dated August 24, 1942. On October 15, 1943, it filed with the Pennsylvania Liquor Control Board an application in proper form and substance accompanied by the prescribed fees and bond for a club liquor license to be exercised in its buildings, located at 182 Bridge Street, Phoenixville, in this county. The applicant is the only person in any man-

ner ·pecuniarily interested in the business asked to be licensed and there is no other person who will be in any manner pecuniarily interested therein during the continuance of said license.

Appellant is an organization of good repute and at the time of filing this application held no liquor license of any character issued under the provisions of the Pennsylvania Liquor Control Act of November ·29, 1933, P. L. 15. It has the essential elements of a club as defined by the Pennsylvania Liquor Control Act and, except for the Quota Law as interpreted by the Liquor Control Board, that board would have issued a new club liquor license to the applicant.

The population of the Borough of Phoenixville according to the 1940 census was 12,282. No change in that figure appears as of October 15, 1943, the date of appellant's application for a license. The total number of licenses in effect in the Borough of Phoenixville was 26. Thereof three are hotel liquor licenses; eight are club liquor licenses; three, malt beverage club licenses; ten are restaurant liquor licenses; and two are eating place malt beverage licenses. Of the three hotel liquor licenses one was not included by the Liquor Control Board in determining the quota of licenses that could be granted in Phoenixville, but two thereof were so included because they did not contain sufficient bedrooms as required by the act of assembly in question and below quoted. Accordingly the board concluded that there were in effect and chargeable against the quota as of October 15, 1943, a total of 14 licenses.

From the above-stated facts the board concluded that the quota of licenses that could be granted in the Borough of Phoenixville, except for hotels as defined by the act of assembly, was 13 and that therefore the quota was exceeded by one. It accordingly refused a license for the reasons stated in the language above quoted. This appeal followed.

It is now agreed by the board that two of the hotel licenses should be excluded in determining the quota in question, as it is admitted that another of the three hotels in Phoenixville does contain a sufficient number of bedrooms to qualify it as a hotel within the provisions of the clause defining "hotels" as used in the statute here under consideration: Liquor License Quota Act of June 24, 1939, P. L. 806, sec. 1, 47 PS §744-1001. There are therefore for the purpose of this hearing only 13 liquor licenses chargeable against the quota of licenses allowable in Phoenixville, said quota being therefore equalled but not exceeded.

We believe that, although the factual situation before us is not the same as that before and passed upon by the board—the number of hotel licenses to be taken into consideration being reduced by one—nevertheless, since this is a hearing de novo devolving upon the court the duties in that regard above pointed out, this court may and should consider the matter in the light of the facts as it now finds them as above, rather than send it back to the board for its consideration and action in the light of said different facts.

The same basic question here raised as to the inclusion of clubs in the prohibition of the act of assembly in question was before this court once before in 1942 in In the Matter of Robinson-Welburn Lodge No. 7, I. B. P. O. E. of the World, an appeal from the Liquor Control Board's decision. denying an application for a club liquor license in a municipality wherein the quota was exceeded at the time the application was made. Therein, after careful consideration of the provisions of the statute and the many decisions of lower courts in this State on the same subject, we concluded and held that the prohibition of the act extended to clubs and accordingly sustained the action of the Liquor Control Board in refusing to grant and issue the license there applied for. After further consideration we find nothing that causes us to reach any

different conclusion in regard to the construction of the statute.

The prohibitory provisions of the act of assembly relied on by the board, and here controlling, to wit, Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, are contained in section 2 thereof, as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined by this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded." Section 1 of said act states that "The word 'hotel', as used in this act, shall mean any reputable place operated by a responsible person of good reputation, where the public may, for a consideration, obtain sleeping accommodations . . . (c) In municipalities having a population of three thousand and more but less than one hundred thousand inhabitants [in which category Phoenixville lies], shall have at least twelve permanent bedrooms for the use of guests."

There being no question about the responsibility of this applicant and its members and the other statutory

requirements, as the board frankly admits, the only question for us to decide is as to the construction and effect of said act.

We cannot agree with appellant's contention that the Act of 1939, above quoted, has no application to club liquor licenses and that therefore licenses may be granted in municipalities where the quota of liquor licenses is exceeded. In support thereof it is argued that section 2 of said act, above quoted, is so ambiguous as to require the application of the rules of statutory construction as stated in the Statutory Construction Act of May 28, 1937, P. L. 1019, in order to ascertain the intention of the legislature and that, so doing, it appears that the legislature intended to exclude clubs from the prohibition of the second section of the said paragraph. However, in said Statutory Construction Act it is provided at section 51: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

A careful reading of the Act of 1939 here under consideration reveals no ambiguity—no difficulty in ascertaining and effectuating the intention of the legislature. The legislature has clearly stated what the maximum number of licenses that may be granted in any municipality shall be—not in excess of one for each one thousand inhabitants or fraction thereof—and that in determining that quota licenses granted to hotels, as defined in the act, and clubs are not to be counted. We find no ambiguity in that regard. It then goes on to provide that existing licenses may be renewed or transferred without regard to said limitation but that where the number of licensed places in a municipality exceeds said limitation no new li-

cense shall be granted as long as said limitation is exceeded, except for hotels as defined in the act. We find no ambiguity there or difficulty in understanding such language by applying to the words used their customary meaning. We deem the legislative intention to be clear to the effect that, while both hotels, as defined by that particular act, and clubs are to be excluded in the calculations fixing the quota of licenses grantable in any municipality, after said quota is fixed only hotels are excepted from the restriction in regard to the granting of new licenses in said municipality. Any other construction is strained and disregards the clear meaning of the language used by the legislature. (Some of the constructions adopted by certain of the lower courts of this State simply in effect supply and interpolate the words "and clubs" after the word "hotel" in the next to the last line of the section of the act here in question, as is pointed out in the opinion filed in Castle Del Giudici Society's Liquor License, 90 Pitts. L. J. 538.) We consequently do not have to resort to the "presumption in ascertaining legislative intent", pointed to by counsel, "that the Legislature does not intend a result that is absurd, impossible of execution or unreasonable." The legislative intent here being plainly expressed, as we consider it, if the result is absurd, impossible of execution, or unreasonable—and we do not believe that it is— the proper source of relief is the legislative rather than the judicial branch of the Government. The latter may not usurp the functions of the former and by judicial decision endeavor to alter what might be considered to be undesirable legislation.

The position taken by one lower court and now urged by appellant, that where the quota of licenses that may be granted in any municipality is only equalled but not exceeded a license may be granted therein is, in our opinion, not tenable. It is founded on the last part of the last sentence of section 2 of the Liquor License Quota

Act of 1939, the judge who wrote two opinions in said court so holding, pointing to and quoting said part of that sentence and citing it as his authority. (See Horton Township Sportsmen's Club License, 41 D. & C. 261, and East End Hose Company's License, 46 D. & C. 380.) However, that overlooks and disregards entirely the very definite mandate of the first sentence of said section to the effect that no license shall be granted in excess of the quota as fixed thereby and is not in accord with the spirit of the act as we read it. (That the judge in question did overlook the said mandate is clear from his own language when he says (p. 384): "Even if it were held that the prohibition against the issuance of new licenses affected all kinds of licenses for the sale of liquor, or malt or brewed beverages at retail, including clubs, there is no prohibition against the issuance of a new club license unless the number of retail licenses to be computed in determining the population restriction *exceeds the number* allowed under the Act of June 24, 1939." The first sentence of the section above referred to contains a plainly-expressed prohibition to that effect.) That view limits the number of licenses that may be granted not to the quota fixed by the statute but to the quota plus one. We deem the argument to that effect more specious than sound and cannot uphold it. We have no doubt, from a careful reading of the whole act in question, including the title, that the legislature meant to limit licenses to the quota determined as therein provided and cannot join in the possible construction of one particular phrase thereof that might work a contrary result when considered apart from its context.

Nor do we agree with the argument of counsel for appellant that the classification of hotels effected by the Act of 1939, supra, is arbitrary and unreasonable and consequently no hotel licenses may be counted against the quota. It will be noted that the statute,

not the board, by the definition of "the word 'hotel', as used in this act", works that classification. The board simply followed the statute, as it was bound to do in this application, in applying the definition—it did not act independently in that regard. That the legislature could include such a definitory provision in the act we have no doubt. We see nothing arbitrary or unreasonable in that connection. It was merely one step in setting up the standard by which the number of licenses grantable in any municipality should be determined. If the law-making body saw fit to exclude the larger hotels from, but include the smaller hotels in, that standard, we think there is no valid objection in law thereto—no sound reason why such a distinction should not be made for the purpose for which it was made. If there be other objection, e. g., of a practical nature, that is a matter for the legislature, not the courts.

We have examined many if not all of the reported cases decided in the various lower courts of this State passing on the question here before us. We deem no detailed comment thereon necessary. We cannot agree with the logic and reasoning set forth in the opinions in those thereof that arrive at a conclusion different from the one herein expressed, with all due respect for the judges concerned. As above indicated, we see no difficulty in construing the pertinent statutory provisions and are constrained to the construction we have placed on them. The result is the sustaining of the action of the board in its denial of the application for the license here sought.

And now, April 30, 1945, after hearing on appeal the application of The Ten to Six Club for the grant of a club liquor license for its premises located in the Borough of Phoenixville, Chester County, Pa., the refusal of the Pennsylvania Liquor Control Board to grant and issue said license is sustained.